## Case No. 12,233.

### The ST. LAWRENCE.

#### [2 Gall. 19.] [1]

Circuit Court, D. New Hampshire. May Term, 1814.

PRIZE—DISTRIBUTION—PRIZE AGENTS—OFFICERS AND CREW OF CAPTOR—COMMANDER.

1. A court of prize will take cognizance, not only of all questions of prize, but of every incident thereto, until a final adjustment of all claims arising from the capture. It will, therefore, entertain a supplemental suit for the distribution of prize proceeds.

2. Where the proceeds have been paid to prize agents, and the cause is no longer pending, the proper jurisdiction is the district court. Where the proceeds remain in the circuit court, application may be originally made there, to compel distribution.

[Cited in Jackson v. The Magnolia, 20 How. (61 U. S.) 328.]

3. The prize act of 27th Jan., 1813 [2 Stat. 794]. c. 155, authorizing the marshal to make distribution, does not narrow this jurisdiction. He still acts subject to the control of the prize court.

4. That act does not apply to sales made under interlocutory decrees, but only to sales after final condemnation.

5. Of the appointment, duties and authority of prize agents.

See the very able opinion of Dr. Croke in 2 Hall's Law J. 133.

6. Prize agents have a lien on the prize proceeds for their disbursements and commissions. And this applies to prize agents de facto, though irregularly appointed.

7. In the absence of all other regular prize agents, the owners of the ship and their agents are entitled to the trust, management and control of the captured property for the benefit of all parties.

[1] [Reported by John Gallison, Esq.]

8. Prize agents have an authority coupled with an interest, and cannot be devested of their authority, so as to take away their title to claim from the proceeds their disbursements and commissions. But when these are paid, the officers and crew have a right to take their shares directly at the hands of the court.

9. A commander of a privateer, who is authorized to award certain reserved shares among the most deserving in the cruise, cannot award a share to himself. He is a trustee for others, and not for himself.

The decree of this court, condemning the ship St. Lawrence and cargo as prize to the captors [Case No. 12,232], having, with the exception of two suspended claims, (These claims were also rejected at the next term of the supreme court. 9 Cranch [13 U. S.] 120) been affirmed by the supreme court [8 Cranch (12 U. S.) 434], and the cause having been remanded for further and final proceedings, an application by way of petition was made in behalf of the captain and some of the officers and crew of the capturing ship (the America) to have their respective shares of the prize proceeds, when ascertained, paid into the hands of their particular agents, and not into the hands of the supposed general agents of the ship.

This application was resisted by Pitman, of counsel on the part of the ship owners, and the supposed general agents Messrs. Prince and Deland, who asserted their right to a delivery of the whole prize proceeds into their hands, to secure their equitable liens for advances, expenses, disbursements and commissions incurred or made during the cruise.

On the other hand, J. T. Austin, for petitioners, contended first, that Messrs. Prince and Deland were never legally appointed general agents; secondly, if legally appointed, that their authority had expired; thirdly, if the authority were permanent in its form, that it had been legally revoked, and lastly, that at all events they were entitled to a direct payment of their respective shares, after deducting all the legal charges of the agency.

STORY, Circuit Justice. There can be no doubt of the general jurisdiction of the admiralty to take cognizance not merely of the question of prize, but of every incident thereto until a final adjustment of all claims arising from the capture. This is a part of prize jurisdiction, which is settled by solemn authority, and indeed seems essential for the purposes of complete justice in all proceedings in rem. See Smart v. Wolff, 3 Term R. 323; Home v. Camden, 1 H. Bl. 476, 2 H. Bl. 533, etc. Independent therefore of any provision by statute, the right of regulating conflicting claims, of ascertaining the title, character and number, of the captors, and of awarding a final distribution of prize property, attaches as an ordinary incident to the possession of the principal cause. And the courts of the United States, in the exercise of admiralty and maritime jurisdiction, possess

the right in as ample a manner as the prize courts of Great Britain.

It is true, that the act of congress of the 27th of January, 1813 (chapter 155), has authorized the marshal to make distribution of prize proceeds, which come into his hands upon sales made after final condemnation. But this provision was not intended to narrow the jurisdiction of the proper prize court, but merely to avoid the delays incident to sales made during a vacation of the court, and in plain cases to facilitate to the parties the acquisition of their respective shares. Even in these cases, however, the distribution is still subject to the control and regulation of the prize court, whose duty it is to ascertain the proper parties entitled to share, and in case of doubt or difficulty to adjust the contested claims.

In the case before the court, the property was sold under an interlocutory order before final condemnation, and the proceeds brought into the registry to abide the final decision of the appellate court. The provisions of the act of congress do not therefore apply; the distribution must be made by the court itself in the exercise of its ordinary functions. It would seem to follow, that in order to make such distribution, the court must first adjust all the claims, which attach as equitable demands upon the prize proceeds, and perform in some sort that duty, which is ordinarily performed by the marshal.

Although the general jurisdiction for all these purposes seems incontestable; yet, at the argument, a suggestion was thrown out by the court, how far it ought to entertain cognizance as a mere appellate court, over some of the collateral questions which the parties had brought before it, some of these questions seeming more fit to be discussed before a court of original prize jurisdiction. Upon mature reflection and examination of authorities, I am entirely satisfied, that all questions relative to prize property, and of course all incidental claims upon it by reason of the capture, properly belong to the court having possession of the property either actually, or in contemplation of law through prize agents, or having a right to call for the property in order to execute its decrees, and enforce the rights of the parties connected with its proceedings; and that it is perfectly immaterial whether the court possess the cause as of original jurisdiction or by appeal. Not to mention authorities in the admiralty, the reasoning in Smart v. Wolff, 3 Term R. 323; Home v. Camden, 1 H. Bl. 476, 2 H. Bl. 533, 4 Term R. 382, and Willis v. Commissioners of Prize Appeals, 5 East, 22, is in my judgment decisive.

Having disposed of this preliminary ground, I come to the consideration of the questions, which have been made by the parties at the bar.

The 11th article of the shipping articles of the privateer provides, "that the captain and officers of said ship shall appoint an agent or agents for said vessel's company for and during the term of said vessel's cruise." Under color of this clause, the captain and the greater part, if not all, of the officers, by a printed instrument, better adapted in its language to the case of an agency for an individual of the crew, appointed Messrs. Prince and Deland, in terms, "their agents;" and the owners of the privateer also appointed the same gentlemen their agents for the cruise.

Several exceptions have been taken to the validity of this appointment, as a good appointment for the officers and crew under the shipping articles. The first is, that it does not, on its face, purport to be an appointment for the officers and crew, but only for the officers. And certainly, if we are to be governed by merely technical propriety, the objection seems well founded. But, inasmuch as the shipping articles did not require the appointment to be made in any technical or solemn form, I am unwilling, in an instrument executed by unskilful persons, relative to maritime transactions, to admit the strictness of the common law to destroy the manifest intention of the parties. Upon a reasonable construction of the articles, an appointment, made by the captain and officers, of their agents for the cruise, may well be held an appointment to enure for the benefit of the whole crew of the ship.

A second exception is, that the appointment was made by a majority of the officers, and not by all the officers as the articles require. Admitting the fact, that all the officers of the ship, entitled to vote in the appointment, did not coöperate, which seems questionable, I am not sure that an appointment by the captain and a majority of the officers ought not, in articles of this nature and for these purposes, to be deemed a good execution of the authority.

A third exception is, that the appointment was to subsist only during the cruise, and that by lapse of time, the cruise being ended, it has expired. In my judgment, it would be a violation of the obvious intent of the parties, to adopt this limited construction of the power to appoint. It would be saving the letter and extinguishing the spirit of the agreement. The manifest intent of the parties was, that the officers and crew should have agents to act for them in every thing touching that cruise, whose powers should exist as long as the business or objects of the cruise remained unaccomplished. But such agency was not to extend to any future cruise of the privateer.

A fourth exception is, that the appointment has been revoked. If this were true in point of fact, it could not be held to devest the agents of any previously acquired interests in the nature of liens on the prize proceeds; and if done without good cause, I do not think the court ought to refuse to allow a liberal recompense for their services. But in point of fact, there has been no revocation of the appointment by a majority of the officers;

and it would have been a breach of good faith towards the crew to have made any such revocation, if practicable, unless for good cause, followed up by a new appointment. The authority to appoint is joint and not several, and it would be highly injurious to all parties to suffer a general appointment to be controlled by the interested or perverse opposition of one or two individuals.

However, I do not think it necessary very nicely to sift these objections, or one of a more grave character, which was reluctantly urged by counsel, and if true, (which I do not incline to believe) would have cast a shade over the agency of these gentlemen; for there is one circumstance decisive against all these objections, and that is the fact, that Messrs. Prince and Deland have, with the entire acquiescence and tacit consent of all parties, acted as general agents from the commencement of the cruise to the present time. As general agents de facto, they have had the superintendence of all prizes, the payment of all advances and expenses, and the distribution of all prize proceeds; and from their hands the captain, officers and crew, have received their shares of such proceeds without a murmur or complaint. As agents then de facto they are entitled to every indulgence as to their claim, which the most formal appointment would have conferred upon them.

Another consideration also, which renders the discussion of the formal authority of Messrs. Prince and Deland from the officers in a great measure unimportant, is the fact, that they are the acknowledged agents of the owners of the privateer. In the absence of all other regular ship's agents, the owners of the ship and their agents must be entitled to the trust, management and control of the captured property for the benefit of all parties. They are considered as the duces facti; they are responsible to the government and to strangers for the conduct of the ship and crew; and this not merely by the regulations of statute, but by the general maritime law. This is laid down in emphatic terms by Bynkershoek (Quest. Jur. Pub. c. 19), and is the settled rule of prize courts. As general ship owners, and as parties upon whom the law devolves the general responsibility, I apprehend that they are entitled to direct the conduct of the privateer during the cruise, and regulate the prize proceedings, as to the captured property. The law constitutes them, in the absence of all contrary stipulations, the general trustees or agents for all parties. And I may add, that the acts of congress of the 26th of June, 1812, c. 107 [2 Stat. 759], and of the 27th of January, 1813 (chapter 155), evidently contemplate this general character of the owners. If, then, there was no valid appointment by the officers, the trust and management of the prize property devolved on the owners and their authorized agents. "Quacunque via data est," as agents de facto, or as agents of the owner, Messrs. Prince and Deland are entitled to all the rights, which the character of general agency confers over prize proceeds.

What these rights are, I next proceed to consider. The agents have certainly an authority coupled with an interest, and the authority cannot be taken away from them without in the first place discharging that interest. But when once that interest is discharged, I do not perceive, but that the respective parties entitled to share in the proceeds have a complete right to revoke their authority, so far as the agency may be considered as of a private character. The rights then of prize agents, as such, extend no further than to have all their reasonable charges, disbursements, and commissions, in the first instance, paid out of the prize funds, on which they have a claim in the nature of an equitable lien. The Franklin, 4 C. Rob. Adm. 404. It would be a contravention of the language and the intent of the acts of congress, and betray an undue disregard of the interests of persons reposing equally on public and private confidence, for the court to pass by the claims of the agents, and pay into the hands of the individuals of the crew, or their private agents, the gross amount of their shares, and leave the agents to their remedy at common law for a proportional contribution from the crew. In most cases this would be but a mockery of justice.

The prize court, therefore, will attend to the reasonable claims of the owners and agents, and will not disturb any legal or equitable liens, to which they may be entitled. It will pursue, in this respect, the course, which the law has prescribed in the distribution to be made by the marshal. But when it has allowed all these reasonable claims, it is not easy to perceive any reason, why it should withhold the residue from any favored private agent, whom the party entitled to it shall select, at the peril of paying a double commission. The discretion of such an application may well be doubted, but it is a consideration, which cannot be entertained before the prize tribunal.

What I shall do at present is, to refer this application to commissioners, with directions to state the accounts of the cruise, including the charges, disbursements, advances and commissions of the general agents, so far as they may respect the petitioners before the court—and further to state the shares to which the petitioners are entitled, and the number of shares in the whole concern—and the liens or special claims, if any, which the general agents have on any shares. The commissioners are to give notice to the agents or attorneys of the parties of the times and places of their meeting, and to report their doings to the court, as soon as conveniently may be.

With respect to the six shares, which by the shipping articles were reserved to be distributed by the captain among the most deserving of the crew, he has executed his authority by dividing five shares in quarters

among the crew, and awarding one whole share to himself as among the most deserving. The parties, to whom this bounty has been awarded, have now a vested interest in it, which the captain cannot vary or control. Of course, he has no right to have the proceeds paid into his hands. The share reserved by the captain for his own supposed extraordinary services must pass into the general fund, as an unappropriated sum.. It can never be permitted to any person, in violation of the confidence of the owners and crew, to appropriate to himself those rewards, of which he is the mere trustee, for the exclusive benefit of others.

If any of the crew did not proceed on the cruise, under circumstances, which should exclude them from sharing, their shares should be deducted from the general statement.

The prize proceeds belonging to the owners, officers, and crew, who have not objected, will be paid to the general agents.

A special report was afterwards made by the commissioners, which was. after argument. confirmed by the court, and distribution decreed accordingly. [9 Cranch (13 U. S.) 120.]