Drake, Oh. J.,
delivered the opinion of the court:
These cases came into this court under the following act of Congress, passed August 8,1882, (22 Stat. L., 738, ch. 480):
“ AN ACT to refer the claim of the captors of the ram Albemarle to the Court of Claims.
11 Be it enacted by the Senate and Souse of Representatives of the United, States of America in Congress assembled, That the claims of the captors of the ram Albemarle, which was captured and destroyed October twenty-seventh, eighteen hundred and sixty-four, be, and the same hereby are, referred to the Court of Claims, with jurisdiction and authority to hear and determine the sanie, and all defenses thereto which are or may be open to the United States, and to render judgment thereon, with the right of appeal as in other cases; and if said court shall find that either or any of said captors has not or have not received his or their full and just share of the prize money awarded for the capture of said ram Albemarle, according to the proportions provided in the prize laws in force at the time of said capture,*and that he or they are entitled to claim and recover the same, the said court shall render judgment in favor of such captor or captors, respectively, or his or their legal representatives, for such sum or sums as shall in addition to the arriount already paid make the share of such captor or captors, respectively, equal to his or their respective share or shares of said prize money, according to the provisions of the prize laws in force at the time of said capture: Provided, That no suit *60 shall be brought under the provisions of this act after one year from the date of its passage.
“ Sec. 2. That any judgment rendered by the Court of Claims under the provisions of the first section of this act shall be paid by the Secretary of the Treasury out of any money in the Treasury applicable to the payment of prize to captors; and if there shall not be money applicable for that purpose in the Treasury, or sufficient therefor, then the same, or any part thereof for which prize money in the Treasury is insufficient, shall be paid out of any money in the Treasury.not otherwise appropriated.”
Under this act the claims of all the officers and men of Piclcet Launch No. 1, the captor of the ram Albemarle, except those of her commander William B. Cushing, and master’s mates William L. Howarth and Thomas S. Gay, have been presented in this court within the time limited in the act. As the cases all rest on the same facts and law, one finding of facts and one opinion on the law will suffice for all of them.
Under the two decrees of distribution made by the United States District Court for the District of Columbia, set forth in the findings, each of the officers and men of said picket launch, or his administrator, was paid the distributive share apportioned to him by the Treasury Department, as set forth in finding XII; but each party now before the court claims that the amount so paid was not as much as' he, or his intestate, ought to have been paid; aud therefore each asks for a judgment here for an additional amount, under this language of said act:
“If said court shall find that either or any of said captors has not or have not received his or their full and just share of the prize money awarded for the capture of said ram Albemarle, acccording to the proportions provided in the prize laws in force at the time of said capture, and that he or they are entitled to claim and recover the same, the said court shall render judgment in favor of such captor or captors, respectively, or his or their legal representatives, for such sum or sums as shall in addition to the amount already paid make the share of such captor or captors, respectively, equal to his or their respective share or shares of said prize money, according to the provisions of the prize laws in force at the time of said capture.”
Under this provision the first question, in each case, is, whether the claimant, or his intestate, has received his full and just share of the prize money awarded to the picket launch for the capture of the Albemarle, according to the provisions *61 of the prize laws in force at the time of the capture. If he has, his petition must be dismissed; if he has not, the next question is, whether he is “ entitled to claim and recover the same ” at this time and in this proceeding. We will consider these questions in their order.
In regard to the first, it is found that the claimants now in court, or their intestates, were paid, as follows :
F. H. Swan................................... $31,102 50
W. Stotesbury................................ 23, 925 00
C. L. Steever.................................. 23, 925 00
J. Woodman.................................. 11,484 00
S. Higgins.................................. 8, 613 01
E. Hamilton................................... 5, 742 01
E. J. Houghton................................ 4,593 60
B. Harlev.................................. 4,593 60
W. Smith (D. G. George)....................... 4,593 60
E. H. King............................... 4,019 40
H. Wilkes...................................... 4, 019 40
L. Deming.................................... 4,019 40
Whether the sum so paid each party was his “ full and just share” of the prize money depends on the terms of the act of June 30,1864, £‘ to regulate prize proceedings and the distribution of prize money, and for other purposes.” (13 Stat. L., 306, ch. 174.)
By section 10 of that act the distribution of prize money is regulated; and, after providing for certain specific shares, it thus reads:
££ After the foregoing deductions, the residue shall be distributed and proportioned among all' others doing duty on board * * * and borne upon the books of the ship, in proportion to their respective rates of pay in the service.”
A simple arithmetical computation is only necessary to disclose the fact, that if the payments of prize money made to Cushing, Howarth, and Gay, as set forth in finding XII, were lawfully due them, then the present claimants received all that they were entitled to, and can recover no more here; but if those payments were not lawfully due those three parties, then whatever excess they received over the true amount due them was just so much taken from the fund to be divided among the others; and whatever was taken must, under the act giving us jurisdiction herein, be made good to the present claimants, unless the government can establish a valid defense *62 against their claims. The first point to be considered, then, is whether the payments made to those three were valid in law.
And, first, as to Lieutenant Cushing. The claimants contend that under the prize act he, as commander of the picket launch, was entitled to only one-tenth of the prize money awarded to the launch. On the other hand, the defendants claim that he was rightly paid “ in proportion to his rate of pay in the service,” partly as a lieutenant, and partly as a lieutenant-commander, under his subsequent promotion, dated back to the day of the capture.
By section 10 of the Prize Act it is enacted thus:
“ All prize money adjudged to the captors shall be distributed in the following proportions, namely: * * *
“ Fourth. To the commander of a single ship, one-tenth part of all the prize money awarded to the ship under his command, if such ship, at the time of the capture, was under the command of the commanding officer of a fleet or squadron or a division, and three-twentieths if his ship was acting independently of such superior officer.”
It is not claimed that the picket launch, when she made the capture, was acting independently of the commanding officer of the squadron, or of the division; on the contrary, the fact is found that she was acting under the Command of both. If, then, her commander came at all within the purview of that fourth clause, he was entitled to only one-tenth of the prize money awarded to the launch.
Against this view the counsel for the government urges that the pieket launch was not a ship at all within the meaning of that provision, and therefore that Cushing was not subject to that clause. If that position be true in fact and in law, then, of course, Cushing was not restricted to one-tenth; but we have not been able to see that it is true.
The word ship, in its generic sense, means any sea-going craft larger than an undecked boat. Benedict says that in the law the word is equivalent to vessel; and that it is not the form, the construction, the rig, the equipment, or the means of propulsion that makes a ship, but the purpose and business of the craft, as an instrument of naval transportation. (Benedict’s Admiralty, §§ 215, 218.)
There is a specific sense in which the term u ship,” applied to sailing vessels, means a craft having three masuts, with cross-yards on each mast, fitted to carry square sails on each, in *63 addition to a number of fore and aft sails. When such a craft is provided with steam power as well as sails, she is called a steamship. In the specific sense, no barque, brig, brigantine, schooner, or sloop is a ship.
Now, let it be remembered that the prize act of 1864= was passed in time of war, when squadrons of our navy were blockading hundreds of miles of sea-coast, and were made up of vessels of almost every size, form, rig, and armament. Prizes of great value were daily liable to be taken. Congress passed that act to stimulate their capture; and every officer and man, on every vessel, big or little, no matter what its specific denomination, was on the lookout for them, and was ready to encounter great risks to capture them.
Under such circumstances the question naturally arises, whether Congress would be most likely to offer the benefits of the fourth clause aforesaid to the commander of every vessel making a capture when alone, regardless of her specific denomination, or to confine those benefits to the commanders of the very limited number of vessels entitled to the specific name of “ ship,” because of their having three masts, with cross yards, on each of which they could carry square sails. To state such a question is to answer it. The latter cannot be supposed possible.
Moreover, all through the act the word vessel seems evidently intended to apply to and include every species of sea-going craft employed in the Navy; but in the tenth section some unskillful hand substituted ship for vessel, without any apparent reason, so far as we can discern. If that substitution makes a change of sense at all, it is a change which introduces discord, unreasonableness, and incongruity into the act. But to treat the word ship as synonymous with vessel avoids all incongruity, and preserves the integrity and consistency of the act throughout.
But, furthermore, the thirty-second section of the áct seems to us to forbid question on this subject. It is as follows:
“ That in the term ‘ vessels of the Navy ’ shall be included, for the purposes of this act, all armed vessels officered and manned by the United States and under the control of the Department of the Navy.” *64 to the word vessel wherever in that act that word is meant to refer to vessels belonging to our Navy, and cannot be fairly construed to mean any others.
*63 Though these words seem to apply only to the phrase “ vessels of the Navy,” yet we think they may justly be applied also
*64 The phrase “vessels of the Navy” occurs in the act only four times, once in section 10, twice in section 16, and once in section 23; and in each instance it is used to prevent those vessels, or rights connected with them, from being confused with privateers and letters-of-marque, or rights connected with them. Everywhere else than in those four instances the word vessel or vessels stands without the addition of the words “of the Navy,” for the simple reason that the constant repetition of those three words, in that connection, would have been an excrescence.
We therefore hold, that wherever in the act it appears by the context that vessel or vessels means a vessel or vessels belonging to the Navy, it must, under said section 32, be construed to include “ all armed vessels officered and manned by the United States and under the control of the Department of the Navy.”
If, then, ship and vessel are, in law and in this act, synonymous terms, it follows, of course, that Lieutenant Cushing was “the commander of a single ship” within the meaning of the fourth clause in question; And as the picket launch was, at the time of the capture, acting under the command of the commanding officer of the squadron, and also of the Division of the Sounds, it would clearly seem to follow that, under that clause, Lieutenant Cushing was limited to “one-tenth part of all the prize money awarded to the ship under his command.” The whole amount of prize money awarded to the picket launch was $251,284.29, one-tenth of which is $25,128.43, which wonld seem to be all that he was entitled to. But he was, in fact, paid $56,056.27, which is $30,927.84 more than the one-tenth, to pay which to him took just that much from the claimants now seeking relief here. If there was lawful authority for giving him that excess, the payment must stand as a proper deduction from the gross amount of prize money; but if it was a payment made without lawful authority, the claimants are not precluded by it from recourse here.
Lieutenant Cushing came to be paid $56,056.27 by computing his share of the prize money “in proportion to his rate of pay in the service,” and the counsel for the government contends that this was in accordance with law. To sustain that *65 position he relies on the terms of the two decrees of the district court set forth in the finding of facts.
Each of those decrees closes with an order that “the remainder” of the prize money, after deducting costs, charges, and shares of fleet officers, should be “ distributed to the persons doing duty on board said torpedo launch in proportion to their respective rates of pay in the service.”
If the district court had jurisdiction to make that order, then the payment of $56,056.27 to Gushing was lawful and must stand. But had it that jurisdiction ? Let us see.
That the' court, in passing upon the matter of prize in the case of the Albemarle, was exercising a special and limited power, derived solely from, and exercisable only according to, the prize act of 1864, and that it could take only such judicial action, through such modes of procedure, as that act authorized and prescribed, cannot be for a moment questioned. In that case there can be no presumption in favor of jurisdiction; on the contrary, the proceedings of the court must be held illegal unless they were according to the statute, and the facts conferring jurisdiction appear affirmatively. (Thatcher v. Powell, 6 Wheaton, 119; Walker v. Turner, 9 ibid., 541; Harvey v. Tyler, 2 Wallace, 328.)
That the question whether that court had jurisdiction to make the order aforesaid may*be examined and determined here, cannot be doubted; for no rule of law is better settled than that the jurisdiction of any court, exercised in any case, may be assailed in other courts in which its proceedings are relied on by a party claiming the benefit of them (Elliott v. Pearsol, 1 Peters, 338; Shriver v. Lynn, 2 Howard, 43); and if there be found in them a total want of* jurisdiction, they may, by the court in which they are questioned, be rejected as a nullity, conferring no right and affording no justification. (Thompson v. Tolmie, 2 Peters, 157; Voorhees v. Bank U. S., 10 ibid., 449; Cook's Case, 9 C. Cls. R., 288.)
By section 4 of the Prize Act it is made the duty of the district attorney of the United States to file a libel against the prize property, and “proceed diligently to obtain a condemnation and distribution thereof.”
What is the meaning there, as elsewhere in the act, of the word distribution ? We have carefully read and considered the entire act, and have reached the conclusion that that word re *66 fers to two things: first, a division of the prize money between two or more vessels making or aiding in the capture, or between the capturing vessel or vessels and the United States; and, second, a division among the fleet officers and the officers and crew of a capturing vessel of the prize money awarded to her by judicial decree.
We have also come to the conclusion that the former division or distribution must be decreed by a prize court, and can be no otherwise made; but that the latter cannot be decreed by that court, but must be made by the Treasury and Navy Departments, and can be made by no other authority in the government.
By sections 9 and 10 of the Prize Act it is enacted—
u § 9. That in case a decree of condemnation shall be rendered, the court shall consider the claims of all vessels to participate in the proceeds; * * * [and] the court shall make a decree of distribution, determining what vessels are entitled to share in the prize, and whether the prize was of superior, equal, or inferior force to the vessel or vessels making the capture. And said decree shall recite the amount of the gross proceeds of the prize, subject to the order of the court, and the amount deducted therefrom for costs and expenses, and the amount remaining for distribution, and whether the whole of such residue is to go to the captors, or one-half to the captors and one-half to the United States.
“§ 10. That the net proceeds of all property condemned as prize shall, when the prize was of superior or equal force to the vessel or vessels making the capture, be decreed to the captors; and when of inferior force one-half shall be decreed to the United States and the other half to the captors.”
These are the only provisions which authorize the prize court to decree distribution jn cases of naval vessels. To any intelligent'reader it could not, it seems to us, be otherwise than manifest that there is not in them the least ground on which to base a claim of right in the prize court to make a distribution of prize money among individual captors; but that its whole authority is, in terms, confined to determining, 1. What net amount or residue remains for distribution; 2. What vessels are entitled to share in that residue; 3. Whether the prize was of superior, equal, or inferior force to the capturing vessel or vessels; and 4. Whether the whole of the residue should go to the captors, or one-half to the captors and one-half to the United States.
*67 There is but one instance named in the act in which the prize court may itself make distribution among individual captors, and that is in the case of captures by privateers and letters-of-marque, concerning which it is declared in section 10 that the whole shall be decreed to the captors, unless it be otherwise provided in the commissions issued to such vessels; and in section 16 “ the distribution shall be made by the court to the several parties entitled thereto,” and that the court may appoint a commissioner to make such distribution.
On the other hand, as to distribution of prize money to the individual captors on a naval vessel, section 16 declares—
“ That the net amount decreed for distribution to the United States, or to vessels of the navy, shall be ordered by the court to be paid into the Treasury of the United States, to be distributed according to the decree of the court. And the Treasury Department shall credit the Navy Department with each amount received to be distributed to vessels of the navy; and the persons entitled to share therein shall be severally credited in their accounts with the Navy Department with the amounts to which they are respectively entitled.”
Here the words u to be distributed according to the decree of the court” might seem at first blush to justify the court in decreeing distribution among individual captors; but when we remember the explicit terms of section 9, and consider the manifest purpose of the act, as already shown, we have no difficulty in holding that the distribution referred to in those words is that between vessels, or between a-vessel or vessels and the United States'; and that those words confer no right on the court to decree that the residue be distributed among individuals in this or that proportion or by this or that rule. The rights of the officers and crew of the capturing naval vessel are not left to depend on a judicial ascertainment and fixation of the distributive share of each one; for section 10 declares how and in what proportions distribution shall be made, and section 16 imposes the duty of distribution upon the Treasury and Navy Departments.
So far, then, as the decrees of the district court assumed to order distribution to persons doing duty on the torpedo launch, it acted without any lawful authority, and its decree was in that particular coram nonjudice and void. But it was doubly so when it undertook to order that the distribution should be to “ the persons,” that is, a lithe persons “ doing duty on the torpedo launch, *68 in proportion to their respective rates of pay in the service for the commander of the launch was, by clause four of section 10, first to be paid one-teuth part of all the prize money, and the distributive residue could not be found until that one-tenth should be deducted. Of that deduction the district court took no notice; and so Lieutenant Cushing came to be paid more than in law he was entitled to, and the other officers and the men of the launch, now heie as claimants, lost just the excessive amount paid him.
The wrong of this becomes more striking on a critical view of these words in the fifth clause of section 10:
“After theforegoing deductions, the residue shall be distributed and proportioned among all others doing duty on board * * * in proportion to their respective rates of pay in the service.”
“ The residue” was what remained “ after the deduction” inter alia of the commander’s one-tenth ; and those words commanded that residue to be distributed “among all others doing duty on board.” More mandatory and peremptory words might perhaps have been chosen to express the idea there intended, but they would not more plainly have indicated the legislative purpose that the comtaander should not share in the distribution of “ the residue.” The act of the officers of the Treasury and Navy Departments in making the payments they did to him was, therefore, wholly unauthorized, though they doubtless considered it lawfully ordered by the district court’s decrees.
But there was another element of illegality and wrong in the payments to Cushing, as also in those to Master’s Mates Ho-warth and Gay, which it devolves on us to rectify and remedy. As set forth in finding VIII, each of those three officers was promoted between the date of the capture and that of the first distribution of prize money. Cushing became commander and Gay became ensign, each to take rank from that date, while Howarth was made ensign from September 17, 1864, and master from the date of the capture. Each of those officers received prize money, not in proportion to the rate of pay he was by law entitled to on the day of the capture, but to the rate of pay appertaining to the grade to which he was subsequently promoted. This, we suppose, was allowed by the department officers on the theory that, as the promoted pay was given them back to the day of the capture, they were entitled to prize *69 money in proportion to it; but in our view this was altogether erroneous.
In every case such as this the rights of the captors are declared by statute, and they become fixed at the moment of capture; and nothing less than a statute can devest, diminish, or unsettle the rights so fixed.
In every case where, as in this, a fight precedes the capture, there are necessarily deaths among the captors; but the lights of the dead are not thereby lost or impaired, but survive in their legal representatives, and cannot be affected by anything subsequently done by the survivors, by courts, by governmental departments, or by government officers.
If so with regard to the dead, why not as to the living? No-valid reason, as it seems to us, can be given why it should not be so, and only so, as to both dead and living.
From this it follows that whoever gets more than his “ full and just share of the prize money” diminishes, to that extent, the full and just share of every other one of the captors, living. or dead, not only without lawful authority, but, as we consider, regardless of law.
Our views on this subject are in direct accordance with those of the late Attorney-General Pierrepont (15 Opinions, 63), and we do not understand the counsel for the government now to claim that that officer’s opinion was incorrect.
From all the foreging considerations we have reached these conclusions:
1. That Lieutenant Gushing had no lawful right to prize money in proportion to Ms rate of pay.
2. That his rightful share of the prize money was the one-tenth of $251,284.29, and no more.
3. That Howarth and Gay were entitled to prize money only in proportion to the rate of their pay as master’s mates on the day of the capture.
4. That Gushing was paid $30,927.84, Howarth $18,979.02, and Gay $11,801.52 more than they were respectively entitled to in law, and that the amount to go to all the other captors was reduced by the aggregate of those three sums, namely, $61,708.38;
If these conclusions be correct, why are not these'claimants respectively entitled to judgments, in the words of the statute-giving us jurisdiction,
*70 “ For such sum as shall in addition to theamount already paid make the share of such captor * * * equal to * * * his share * * * of said prize money, according to the provisions of the prize laws in force at the time of said capture! ”
The counsel for the government contends that all the present claimants were represented by counsel in the district court, and that, doubtless, the counsel framed the decrees which placed Cushing among those who were to receive in proportion to their respective rates of pay. But we have found as a fact, that none of the captors but Cushing was so represented in that court 5 and it is quite plain that he was directly and largely interested in having the decrees put into that shape. But even had all the captors been represented there, and had every one assented to that shaping of the decrees, it could not have made valid what, for want of jurisdiction in the court, was void. The reports of the country are full of decisions holding that no consent of parties can confer upon a court jurisdiction of a subject-matter not put by law within the scope of its powers.
The counsel further contends that, these claimants having acquiesced in two distributions, well knowing that distribution meant exhaustion of the fund, they are estopped by their silence, at least as to the amount involved in the second distribution, namely, $1.95,836.39, from now claiming any more. Whatever force this position might have at common law, we do not see how it can have any under the statute giving us jurisdiction of these cases. By it, if we “find that any of said captors has not received his full and just share of the prize money, * * * according to the proportions provided in the prize laws in force at the time of said capture, and that he is entitled to claim and recover the same,” we are commanded “to render judgment in favor of such captor” for such sum as shall give him his full and just share.
This mandate would seem to be a waiver by the United States of any estoppel growing out of acquiescence on the part of the claimants in the payments made in conformity to the decrees of the district court.
But it is. claimed that inasmuch as the statute declares' that the claims brought here in pursuance of it shall be subject to ■“all defenses thereto which are or may he open to the United States,” and, furthermore, requires us to find that the claim *71 ants are “ entitled to claim and recover” their full and just shares of the prize-money, therefore the defense of estoppel by acquiescence may justly be set up.
To this there seems to us to be a ready and sufficient answer. The reports of committees in the two houses of Congress show that Congress was perfectly advised, when it passed the act, that the claimants had received two payments of prize money. If that body had regarded the receipt of those payments as an estoppel of any claim for more, the manifest presumption is that it would not have passed the act at all. Having passed it, the stronger presumption arises,- that it did not mean, while authorizing the parties to appeal to this court for redress, that they should be driven hence by an estoppel, which Congress either ignored or set aside as unworthy of consideration.
The following table shows how the $251,284.29, awarded to the picket launch, ought to have been distributed in. ordej to conform to the Prize Act; what excess over their lawful shares was paid to Cushing, Howarth, and Gay, and what sum should be paid to each of the captors, except those three, so as, when added to what he has already received, to make up to him the share he was rightly entitled to, according to the terms of that act:

This table shows the very remarkable fact that the adjudged share of each of three of the subordinate officers of the launch is greater than that of Lieutenant Cushing, to whose extraordinary skill and gallantry was undoubtedly owing the success of the most daring adventure probably in all naval war *72 fare. We are constrained by our views of the law to a conclusion which gives an assistant paymaster $20,665.37, and each of two third assistant engineers $10,097.57, more than the commander. Without doubt this is such a result as, if foreseen by Congress as possible in any case, would have been guarded against. We are free to say that we would avoid it in framing our judgment if we could. It is an accidental outcome of a capture such as might not happen again in all the wars that the world may know in all the future. That it occurred in this case was simply because a very valuable prize was captured by only fifteen men, to whom the whole of the prize money was awarded. Had only half of it been decreed to the launch, or had the number of the men in her been doubled, no such disproportioned result would have been possible. The defect in the law, however, is one that we have no power to cure. We can only administer the statute as we find it written, not as we think it ought to have been; and under its terms we have seen no way to avoid a result which certainly does not commend itself to our sense of justice.
Judgment will be entered in favor of each claimant, or his administrator, for the sum set opposite his name in-the last column of this table as due him.