# UNITED STATES *v.* STEEVER.

APPEAL FROM THE COURT OF CLAIMS.

Submitted January 9, 1885.—Decided March 16, 1885.

A torpedo steam launch, attached to a division of a naval squadron, though not proved to have had any books, is a ship, within the meaning of the prize act of June 30, 1864, ch. 174, § 10, rules 4 and 5 ; and her commander is entitled to one-tenth of prize money awarded to her, and cannot elect to take instead a share proportioned to his rate of pay ; but her other officers and men are entitled to share in proportion to their rates of pay.

The distribution of prize money among the subordinate officers and crew of a ship " in proportion to their respective rates of pay in the service," under the prize act of June 30, 1864, ch. 174, § 10, rule 5, is to be made according to their pay at the time of the capture, and not according to the pay of grades to which they have since been promoted as of that time.

Under the act of August 8, 1882, ch. 480, referring the claims of the captors of the ram Albemarle to the Court of Claims, each captor is entitled to recover such a sum as, together with the sum formerly paid him by the Secretary of the Navy under the prize decrees in the case of the Albemarle, will equal his lawful share of the prize money in that case.

This was an appeal from a judgment of the Court of Claims. The facts are stated in the opinion of the court.

*Mr. Solicitor-General* for appellant.

*Mr. James Fullerton* for appellee.

MR. JUSTICE GRAY delivered the opinion of the court.

This is an appeal from a decree of the Court of Claims in favor of the appellee in a suit brought by him under the act of August 8, 1882, ch. 480, to recover the amount necessary to make up his lawful share of the prize money awarded for the capture of the rebel ram Albemarle. The facts of the case, as appearing in the findings and judgment of the Court of Claims, are as follows :

The rebel iron-clad ram Albemarle was captured and sunk at Plymouth in the Roanoke River, in the State of North Carolina, on the night of October 27, 1864, by the United States Picket Launch No. 1, an armed torpedo launch propelled by

steam, attached to a division of the North Atlantic blockading squadron, and commanded by Lieutenant William B. Cushing, of the United States Navy, and having on board six inferior officers (of whom the petitioner, a third assistant engineer, was one) and eight men. Lieutenant Cushing had been, by order of the Secretary of the Navy, detached from the command of the United States ship Monticello, and directed to report for duty to Rear Admiral Porter, commanding that squadron; and had been assigned by the admiral to the command of this launch. It does not appear that the launch had any books.

The Albemarle was afterwards raised by the United States forces, and appropriated to the use of the United States, and was twice appraised by duly appointed boards of naval officers; the first time, before she was so appropriated, at the sum of $79,944, which was forthwith deposited by the Secretary of the Navy with the Assistant Treasurer of the United States at Washington; and the second time, under the act of April 1, 1872, ch. 76, 17 Stat. 649, at the sum of $282,856.90, which, less the sum already deposited, was likewise so deposited, pursuant to the act of January 8, 1873, ch. 18, 17 Stat. 405.

Upon successive prize proceedings in 1865 and 1873, in the District Court of the United States for the District of Columbia, the Albemarle was condemned as prize of war, and it was adjudged and decreed that she was of superior force to the launch, and that her appraised value, deducting costs, and amounting to $273,135.09, be paid to the captors as follows: One twentieth part to the admiral commanding the squadron at the time of the capture, one hundredth part to the fleet captain, and one fiftieth part to the officer commanding the division to which the launch was attached, and the remainder distributed to the other persons doing duty on board the launch, in proportion to their respective rates of pay in the service. In all the prize proceedings, there was no appearance by or in behalf of any of the captors except Cushing.

Before either of those decrees was made, three of the officers of the launch were promoted: Lieutenant Cushing, in February, 1865, to the rank of lieutenant commander; and Acting Master's Mates William L. Howarth and Thomas S. Gay, in

March, 1865, the one to the grade of acting master, and the other to the grade of acting ensign; and each promotion to date from October 27, 1864.

The money so ordered to be distributed amounted, after deducting the shares paid to the commander of the squadron, the fleet captain and the division commander, to the sum of $251,284.29, which was distributed by the officers of the Treasury Department among all the officers and crew of the launch, or their legal representatives, in proportion to the respective rates of pay to which they were by law entitled on the day of the capture, except that Cushing, Howarth and Gay were, by order of the Secretary of the Navy, paid in proportion to the rates of pay of the grades to which, after the capture, they had been promoted as aforesaid.

By the act of August 8, 1882, ch. 480, Congress referred the claims of the captors of the Albemarle to the Court of Claims, "with jurisdiction and authority to hear and determine the same, and all defences thereto which are or may be open to the United States, and to render judgment thereon, with the right of appeal as in other cases;" and if the court should find that any of the captors had not received their full and just share of the prize money awarded for the capture of the Albemarle, according to the proportions provided in the prize laws in force, at the time of the capture, and that they were entitled to claim and recover the same, then to render judgment in favor of them, or their legal representatives, for such sums as, added to the amount already paid, should make up their lawful shares; and provided that no suit should be brought under the provisions of this act after one year from the date of its passage; and that any judgment rendered by the Court of Claims should be paid by the Secretary of the Treasury out of any money in the treasury applicable to the payment of prize to captors, and, failing such money, out of any money in the treasury not otherwise appropriated. 22 Stat. 738.

Within the time limited by this act, all the officers and men of the launch, or their legal representatives, except Cushing, Howarth and Gay, brought suits under it in the Court of Claims, which held that, according to the prize laws in force at the time

of the capture, Lieutenant Cushing was not entitled to prize money in proportion to his rate of pay, but only as commander of a single ship to one tenth of the prize money, and had therefore received $30,927.84 more than he was by law entitled to; and that Howarth and Gay were entitled to prize money only in proportion to their rate of pay as acting master's mates on the day of the capture, and not according to the pay of the grades to which they had since been promoted, and had therefore received, Howarth $18,979.02 and Gay $11,801.52, more than they were respectively entitled to; and that by the amount of these three sums, or $61,708.38, the other twelve captors had received less than they were entitled to; and gave judgment for each of them, or their representatives, accordingly. 19 C. Cl. 51.

The name, rank and pay of the officers and crew on board the launch at the time of the capture, the amount which each one, or his representatives, had received under the prize proceedings, the amount which each should have received in the opinion of the Court of Claims, and the amount now due to each according to the judgment of that court, were as shown in the following table:

| Name and rank. | Pay. | Prize Proceedings. | Court of Claims. | Due. |
|---|---|---|---|---|
| William B. Cushing, lieutenant............. | $1,875 | $56,056 27 | $25,128 43 | ........... |
| Francis H. Swan, acting ass't paymaster .... | 1,300 | 31,102 50 | 45,793 80 | $14,691 30 |
| William Stotesbury, third ass't engineer..... | 1,000 | 23,925 00 | 35,226 00 | 11,301 00 |
| Charles L. Steever, third ass't engineer...... | 1,000 | 23,925 00 | 35,226 00 | 11,301 00 |
| William L. Howarth, acting master's mate... | 480 | 35,887 50 | 16,908 48 | ........... |
| Thomas S. Gay, acting master's mate........ | 480 | 28,710 00 | 16,908 48 | ........... |
| John Woodman, acting master's mate....... | 480 | 11,484 00 | 16,908 48 | 5,424 48 |
| Samuel Higgins, first-class fireman.......... | 360 | 8.613 01 | 12,681 36 | 4,068 35 |
| Richard Hamilton, coal-heaver.............. | 240 | 5,742 01 | 8,454 24 | 2,712 23 |
| Edward J. Houghton, ordinary seaman...... | 192 | 4,593 60 | 6,763 39 | 2,169 79 |
| Bernard Harley, ordinary seaman........... | 192 | 4,593 60 | 6.763 39 | 2,169 79 |
| William Smith, ordinary seaman............. | 192 | 4,593 60 | 6,763 39 | 2,169 79 |
| Robert H. King, landsman ................ .. | 168 | 4,019 40 | 5,919 62 | 1,900 22 |
| Henry Wilkes, landsman.................... | 168 | 4,019 40 | 5,919 62 | 1,900 22 |
| Lorenzo Deming, landsman................. | 168 | 4,019 40 | 5,919 61 | 1,900 21 |
| | | 251,284 29 | 251,284 29 | 61,708 38 |

The present suit is brought under the act of August 8, 1882, ch. 480, by one of the subordinate officers of the launch who had not been promoted since the capture of the Albemarle. The question whether he has heretofore received less than his

lawful share of prize money depends upon the question whether larger shares than the prize act allowed have been awarded and paid to Lieutenant Commander Cushing, and to Howarth and Gay, who, at the time of the capture, were two of his acting master's mates.

The prize court held that Cushing was entitled to share according to rate of pay with the other officers and men on board the launch. The Court of Claims held that he was entitled to one tenth of the prize money as commander of a single ship. The question which of these views was correct depends upon the rules laid down in section 10 of the prize act of June 30, 1864, ch. 174; 13 Stat. 306.

By those rules, all commanding officers have certain fractional parts of the prize money; and none of them have, or can elect to take, a share proportioned to their pay. By rule 4, there is to be paid "to the commander of a single ship one tenth part of all the prize money awarded to the ship under his command, if such ship at the time of the capture was under the command of the commanding officer of a fleet or squadron, or a division, and three twentieths if his ship was acting independently of such superior officer." By rule 2, to the commanding officer of a division is to be paid one fiftieth part of any prize money awarded to a vessel of his division, unless he elects to receive instead the share due to him as commander of a single ship making or assisting in a capture, that is to say, one tenth. And by rule 1, the commanding officer of a fleet or squadron receives in all cases one twentieth of all prize money awarded to vessels under his immediate command. So, by rule 3, the fleet captain receives one hundredth part of prize money awarded to vessels of the fleet or squadron in which he is serving, with the single exception that when the capture is made by the vessel on board of which he is serving, he shares, in proportion to his pay, with the other officers and men on board. It is only "after the foregoing deductions," that rule 5 directs that "the residue shall be distributed and proportioned among all others doing duty on board (including the fleet captain), and borne upon the books of the ship, in proportion to their respective rates of pay in the service." 13 Stat. 309, 310.

Those rules would seem to have been framed upon the theory that in making general regulations for the distribution of prize money it is more just and equitable, and more suitable to the rank of commanding officers, to grant them a certain fractional part, than to determine their shares by their rates of pay, like subordinate officers and men; and upon the supposition that the fractional part awarded to the commander of a single ship will usually be more than equivalent to a share proportioned to his rate of pay.

But whatever may have been the reasons on which the general rules of distribution laid down in the prize act were founded, it is enough to say that those rules are fixed and definite, governing all cases coming within their terms, and are the only guides of all courts and officers charged with the duty of administering the prize act. The share of the commander of a ship is the same, whether he is leading in action or lying disabled in his berth; and the share of the admiral commanding the squadron is not increased if the capture is made by his flagship, nor diminished if is made without his participation or knowledge by another ship belonging to his command. *Lumley* v. *Sutton*, 8 T. R. 224, 229; *Pigot* v. *White*, 4 Doug. 302; *S. C.* 1 H. Bl. 265 note; Dr. Lushington, in *The Banda & Kirwee Booty*, L. R. 1 Adm. & Eccl. 109, 250; *Decatur* v. *Chew*, 1 Gallison, 506; 11 Opinions of Attorneys General, 9, 94. The courts cannot depart from the express law, because of the peculiar bravery or merit of the captors, or any of them, in a particular case. *The Atlanta*, 3 Wall. 425, 433; *Porter* v. *United States*, 106 U. S. 607, 611; *The Joseph*, 1 Gallison, 545, 561; *The Anglia*, Blatchf. Prize Cas. 566.

We can have no doubt that the launch which took the Albemarle was "a single ship," within the meaning of the rules of distribution in the prize act of 1864.

In those rules, the words "single ship" are used in contradistinction to the words "vessel or vessels," which include more than one; and upon a view of the whole act, it is manifest that the word "ship," in the few instances in which it occurs, has no restricted sense, implying three square-rigged masts, or any masts at all, but is synonymous with the general

words "vessel of the Navy," or simply "vessel," as used throughout the act, and comes within the definition of § 32, by which in the term "vessels of the Navy" are to be included for the purposes of this act, all armed vessels officered and manned by the United States, and under the control of the Department of the Navy. 13 Stat. 315. In the re-enactment of the fourth rule in Rev. Stat. § 4631, the words "commander of a single vessel" are substituted for "commander of a single ship."

Nor is it material that there was no affirmative proof that the launch had any books. The keeping of books is not made a condition of the right of any vessel to share in prize money. The books of a ship are but the usual evidence of service on board; and neither the omission to keep books, nor the neglect of the proper officers to enter names upon them, can be held to cut off those lawfully assigned to duty on board, and actually doing such duty, from participation in prize money awarded to the ship. It is found as a fact that Lieutenant Cushing had been detailed by the proper authorities from the ship which he had previously commanded; and as to the other officers and men, the doing duty on board is sufficient *prima facie* evidence, at least, that they belonged to the launch, and were entitled to share in the prize money. In *Wemys* v. *Linzee*, 1 Doug. 324, cited for the United States, the captain of marines, who was denied an officer's share, was no part of the complement of the ship. See *Mackenzie* v. *Maylor*, 4 Doug. 3.

The launch being a single ship, within the meaning of the prize act, her commander, as well as her other officers and her crew, was entitled to prize money according to the fourth and fifth rules of distribution therein prescribed.

The prize court therefore erred in awarding to her commander, instead of his one-tenth of the prize money, a share proportioned to his rate of pay.

Another error occurred in the distribution of the prize money, by order of the Secretary of the Navy, to Cushing, Howarth and Gay, according to the rates of pay of the grades to which they had been promoted since the capture. Although prize money is, strictly speaking, a matter of bounty and not of

right, and no one has any absolute title to it before adjudication, yet unless the government, acting through the proper department, has clearly manifested an intention to revoke the grant, or to alter the mode of distribution, it is to be awarded and distributed according to the laws in force and the facts existing at the time of the capture. *The Siren,* 13 Wall. 389; *The Elsebe,* 5 C. Rob. 173; *Stevens* v. *Bagwell,* 15 Ves. 139, 152; *Pill* v. *Taylor,* 11 East, 414, and 8 Taunt. 805; 11 Opinions of Attorneys General, 102. The direction in the prize act to make distribution among inferior officers and men "according to their respective rates of pay in the service" naturally implies the rates of their pay at the time of the capture, by relation to which the subsequent distribution is made; and not those rates as affected by promotions after the capture and before decree or distribution, although such promotions, so far as affects rank, and possibly ordinary pay, date from the day of the capture. To hold otherwise would be to leave the shares of prize money, not only of the persons promoted, but also of all others on board and entitled to share according to rate of pay, subject to be varied in consequence of delay in obtaining distribution.

For these reasons, this court concurs in the conclusions of the Court of Claims as to the shares of prize money which the officers and crew of the launch were entitled to receive under the prize laws in force at the time of the capture. The inequitable operation of those laws, as applied to a capture by a vessel having so small a number of officers and men as this launch, by which the leader of the enterprise obtains less prize money than a paymaster or an engineer under his command, is a matter for the consideration of Congress, and not of the courts.

The report of the Committee on Naval Affairs of the House of Representatives, accompanying the bill which was afterwards passed as the act of August 8, 1882, ch. 480, referred, among other things, to the following documents: The decrees of the prize court in the case of the Albemarle. The orders of the Secretary of the Navy for the distribution of the prize money. The opinion of Attorney General Reverdy Johnson,

dated November 19, 1849, that if accounting officers err, designedly or by mistake, the loss must fall on the United States. 5 Opinions of Attorneys General, 183.   The opinion of Attorney General Pierrepont, dated December 10, 1875, that this launch was " a single ship," within the meaning of the prize act ; that her commander was entitled to his fractional part, and could not share according to his pay, in the prize money of the Albemarle; and that the rates of pay, according to which others on board the launch were entitled to share in the prize money, were the rates of pay at the time of the capture.   15 Opinions of Attorneys General, 63.   A letter of the Secretary of the Navy to the counsel of the captors, dated April 24, 1877, stating that, as the prize money of the Albemarle had been fully distributed, and as there was no other fund which he could lawfully order to be paid to her captors, they must look to Congress for the relief to which they seemed to be entitled. Report No. 90, H. R. 1st Sess. 47th Congress.

It is evident, therefore, that the act of 1882 was passed with a knowledge of the manner in which the prize money for the capture of the Albemarle has been distributed by the Secretary of the Navy under the decrees of the prize court; and the reasonable inference is that Congress intended, without impeaching the validity of the distribution so made, or affecting the right of any captor to hold the money already paid him, but treating each as having received no more than a suitable reward for his gallantry, to allow out of the Treasury, to those of the captors who had received less than their lawful share according to the rules of the prize act, enough to make up the deficiency.   The joint effect of the act of 1882 and the previous distribution is the same as if the prize money had been distributed in conformity with those rules, and Congress had afterwards granted to Cushing, Howarth and Gay, out of money in the Treasury, sums in addition to their lawful shares of prize money, as was done in the case of Captain Perry for captures on Lake Erie in the War of 1812.   Act of April 18, 1814, ch. 70 ; 3 Stat. 130.

It is therefore unnecessary to express an opinion upon the question argued by counsel, whether, under the act of 1864,

the jurisdiction of the prize court, upon the condemnation of a prize taken by an armed vessel of the Navy, extended to determining the separate shares of the officers and crew ; or was limited to adjudging what vessels were entitled to share, and whether, by reason of their force as compared with that of their prize, the whole or the half of the proceeds should go to them—leaving the distribution among the officers and men to be made by the Secretary of the Navy, according to the records of the department.*

*Judgment affirmed.*

---

* See act of July 17, 1862, ch. 204, § 5; 12 Stat. 607; act of June 30, 1864, ch. 174, §§ 1, 7, 9, 10, 16, 27, 28; 13 Stat. 307–314; *The St. Lawrence,* 2 Gallison, 19; *Proceeds of Prize,* Abbott Adm. 495; *The Glamorgan,* 1 Sprague, 273; *The Cherokee,* 2 Sprague, 235; 5 Opinions of Attorneys General, 142.