Peelle, J.,
delivered the opinion of the court:
The auditor of the court, to whom this case was referred to inquire into and report the names of the officers and enlisted men entitled to share, and in what amounts, in the residue of the bounty found due the vessels of the United States employed in the destruction of the Spanish fleet off Santiago Bay, has made his preliminary report herein asking for instructions as to the right of certain claimants, set forth in his report, to share in the distribution of the bounty so awarded.
Under Revised Statutes, section 4635, bounty money is to “ be divided among the officers and crew in the same manner *202 as prize money.” Revised Statutes, section 1631, prescribes the manner of the distribution of prize money, while section 1633 provides, among other things, that “no officer or other person who shall have been temporarily absent on duty from a vessel on the books of which he continued to be borne, while so absent, shall be deprived, in consequence of such absence, of any prize money to which he would otherwise be entitled. And he shall continue to share in the captures of the vessels to which he is attached until regularly discharged therefrom.”
It will thus be observed that the distribution of prize money for the capture of vessels of the enemy forms the basis for the distribution of bounty for the destruction of such vessels.
The Auditor for the Navy Department, through whose office prize money is proportioned, under date of November 22, 1898, in a letter to the Secretary of the Navy set forth in the record, formulated the basis which in his opinion should govern in the distribution of prize money, which basis was approved by the Secretary of the Navy as set forth in the record in these words:
“Navy Department,
“ Washington, November £9, 1898.
“ Sir: After careful consideration thereof this Department concurs in the views embodied in your communication of the 22d instant, No. 6102, concerning the matter of the distribution of prize money and recapitulation therein as follows:
“1. A person absent from his vessel on account of sickness,
' or for his personal convenience, or for any reason except the performance of duty, is not entitled to share.
“2. A person temporarily absent on any authorized duty should share. Any absence caused by a duty temporary in its nature should be considered a temporary absence.
‘ ‘ 3. An officer promoted prior to a capture should share according to his increased pay, though notice of his promotion had not been received at the time of the capture.
“4. An officer promoted subject to examination prior to a capture, who subsequently passes the examination, should share according to his increased pay.
“ 5. An officer promoted in course to fill-a vacancy existing prior to a capture, but whose promotion is completed subsequent thereto, should share according to his increased pay.
“6. An officer whose promotion had its inception subsequent to a capture should share according to his pay at the time of the capture, though the promotion takes effect prior thereto.
*203 “7. An enlisted man should share according- to the rating held at the time of a capture, notwithstanding the formal order for such rating was not given nor entered on the books of the ship until after the capture.
“8. In evenly balanced cases the doubt should be resolved in favor of the individual claimant.
“ Yery respectfully,
“Chas. H. Allen,

“Acting Secretary.

“ Auditor for the Navy Department,
“ Treasury Departm.ent.”
In the preparation of the distributive lists and in the payment of individual captors or participants in the engagements in the recent war with Spain we are advised that the rules thus formulated have been adhered to.
We have carefully examined the basis or rules thus formulated, together with the reasons therefor set forth in the communication of the Auditor for the Navy Department, and we are of opinion that the same are in conformity with and in furtherance of the statute.
As to other questions asked by the auditor of the court and not covered by the foregoing basis, we instruct him as follows:
(9) The officers, naval cadets, enlisted men, private marines, and members of the crew are entitled to share in the bounty awarded to the vessel on which they were serving, in obedience to orders, during the engagement, though their pay ac-cqunt may have been kept on other vessels or at the Naval Academy.
(10) .Revised Statutes, section 4631, paragraph 5, provides that after the deductions mentioned in the preceding paragraphs “the residue shall be distributed and proportioned among all others doing duty on board, including the fleet captain, and borne upon the books of the ship, in proportion to th'eir respective rates of pay in the service.” That evidently means the regular rates of pay to which they were entitled at the time of the engagement, and not the additional pay to which “petty officers and persons of inferior ratings” were temporarily entitled under the provisions of sections 1422 and 1572, and such temporary pay for detention beyond *204 the terms of their service should not be added to their regular rates of pay in determining their proportion of such bounty.
(11) By the act of April 26, 1898, section 6 (30 Stat. L., 365), it is provided “that in time of war the pay proper of enlisted men shall be increased 20 per centum over and above the rates of paj1- as ñxed by law,” but that no additional increase for “performing what is known as extra or special dutjT” shall be allowed.
Revised Statutes, section 1612, provides that the officers and enlisted men in the Marine Corps are entitled to the same pay as “ officers and enlisted men of like grades in the infantry of the Army.”
This 20 per centum additional pay the Auditor for the Navy Department has.construed as part of the regular pajr of the marines, and to get at the basis of their share in the distribution of prize money he has added that increase to their regular pay. This construction, we think, is correct, and must, therefore, form the basis for the distribution of bounty.
(12) In reference to the right of the officers and men of the United States Marine Corps under'Lieutenant-Colonel Huntington to share in the bounty awarded to the Resolute, the report of the colonel commandant of the Marine Corps for the year 1898 (p. 6) shows that the battalion under Lieutenant-Colonel Huntington was organized for service in Cuba, ivas transported thither on the U. S. S. Panther, a transport, was landed at Guantanamo Bay June 10, 1898, and remained on shore until August 5, 1898, when the battalion embarked on board the U. S. S. Resolute for transport, where it remained until August 26, 1898, when it disembarked at Portsmouth, N. H. The battalion was never attached to the Resolute for naval duty and was not a part of her complement, though its pay accounts were kept on the paymaster’s books of that vessel for convenience, there being no pajr officer of the Marine Corps present.
The battalion named, though its pay accounts, as before stated, were kept on the Resolute, was never in fact on board that vessel until August 5, more than a month after the engagement at Santiago, and its right to claim is based solely on the ground that its pajr accounts were kept on that vessel for a part of the time the men were on shore.
*205 Never having served on the vessel, they could not have been temporarily absent therefrom, and for that reason we must hold that they are not entitled to share in the bounty awarded to the Resolute.
.(13) Though the right of the individual captor to share in the bounty awarded to his vessel becomes fixed at the time of the destruction, he will forfeit such share, under the ruling of the Navy Department, if he deserts before payment thereof. Such desertion, to work forfeiture, however, must have some relation to his status at the time his right to share in such bounty accrued, as a desertion prior thereto would not work a forfeiture of his right to share in bounty subsequently accruing, though such desertion be under the same enlistment.
The Auditor for the Navy Department in a communication to the Attorney-General under date of December 21,1900, set forth in the record herein, to which reference is made for the information of the auditor of the court, recommends that these bounty claims be sent to his office “for the preparation of the distributive lists and the payment of individual captors and participants in the engagement, as has been requested of the court by the Secretary of the Navy.” He asks the Attorney-General to invite the court’s attention to the case of Swan v. United States (19 C. Cls. R., 51, 65), where, in construing the word “distribution” in prize cases, the court, in substance, held that distribution among the vessel or vessels making the capture must be decreed by a prize court, but that the distribution among the officers and crew of such vessels “must be made by the Treasury and Navy Departments, and can be made by no other authority in the Government,” and yet judgments were rendered in that case in favor of the individual captors.
That decision was rendered January 7,1884, and was after-wards affirmed by the Supreme Court, though no opinion was expressed as to whether the prize court could or could not determine “the separate shares of the officers and crew.” (113 U. S., 747, 755.)
These bounty claims were transmitted to the court by the Secretary of the Navy under the provisions of section 2, act of March 3, 1883 (22 Stat. L., 485), as amended by section 13 of the act March 3, 1887 (24 Stat. L., 505), as involving “con- *206 tro verted questions of fact or law.” Under the reference under the act 1883 no judgment can be rendered by the court, but in lieu thereof “its finding's and' ojúnions” must be reported to the Department for its “guidance and action.”
But by the provisions of section 13, act of March 3, 1887 (supra), it is provided in case of a reference from an Executive Department under said act of March 3, 1883, that “if it shall appear ■ to the satisfaction of the court, upon the facts established, that it has jurisdiction to render judgment or decree thereon under existing laws or under the provisions of this act, it shall proceed to do so, giving to either party such further opportunity for hearing as in its judgment justice shall require, and report its proceedings therein to either House of Congress or to the Department by which the same was referred to said court.”
By section 1 of the act of March 3, 1887 (supra), this court has jurisdiction to hear and determine all matters “founded upon the Constitution of the United States or any law of Congress, except for pensions, or upon any regulation of an Executive Department,” etc. It was under the provisions of that act that the claim of William T. Sampson, which arose under a law of Congress, was determined to judgment at the last term of the court; and those whose claims were likewise transmitted who have elected to invoke the jurisdiction of the court to adjudicate their claims are entitled, under the statute, to the same privilege, about which the court has no discretion.
The auditor of the court is directed to make his report herein as speedily as may be, in conformity with the foregoing opinion, his report, when made, to be subject to exceptions by either party.